**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SLOCUMB LAW FIRM, LLC,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION NUMBER:** |
| **vs.** | * | |
| | * | **8:26-CV-03571-PX** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | * | |
| | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW, the Plaintiff, Slocumb Law Firm, LLC, by and through its legal counsel, Kelly R. Arnold, Esquire and the Slocumb Law Firm, in the above-styled action, and moves this Honorable Court to DENY Defendant Washington Metropolitan Area Transit Authority's (hereinafter "WMATA") Motion to Dismiss and files this brief in opposition in support thereof.

## I. INTRODUCTION

Defendant WMATA seeks dismissal of this action and mischaracterizes Plaintiff's claim as an attempt to enforce an attorney's lien against WMATA. Plaintiff does not ask this Court to impose an equitable lien upon WMATA's property, attach said lien to WMATA's funds, or compel WMATA to honor a lien through an equitable remedy. Instead, Plaintiff seeks damages for WMATA's intentional interference with a valid contractual relationship after WMATA received multiple notices of Plaintiff's contractual and statutory interest in the proceeds of its former client's personal-injury claim. The allegations within Plaintiff's Complaint, which must be accepted as true and construed in Plaintiff's favor, allege facts necessary to plausibly establish

its claim against WMATA. Accordingly, Defendant WMATA's motion to dismiss should be denied.

## II. <u>RELEVANT FACTS</u>

On September 23, 2023, Bryant Smith was a passenger on a WMATA bus. Compl., ECF No. 4, ¶ 5. While a passenger, the bus was involved in a motor vehicle collision, and Smith sustained bodily injuries. *Id.* at ¶¶ 5–6. Smith subsequently retained Plaintiff for legal representation in connection with his personal-injury claim. *Id.* at ¶¶ 6–7. On October 2, 2023, Smith entered into a written legal-services agreement with Plaintiff under which Plaintiff was entitled to a contingency fee of forty percent of the gross recovery, together with reimbursement of advanced case-related costs and expenses. *Id.* at ¶¶ 7–8. The agreement expressly provided that settlement proceeds, judgments, and other recoveries were to be paid into Plaintiff's trust account to cover Plaintiff's fees and costs, as well as medical bills and other liens, before the remaining proceeds were distributed to Smith. *Id.* at ¶ 9.

On October 2, 2023, Plaintiff notified WMATA that it represented Smith. *Id.* at ¶ 12. On November 22, 2023, Plaintiff provided WMATA with an additional written notice to address an erroneous claim number associated with the matter. *Id.* at ¶ 13. These two notices provided WMATA with actual and constructive knowledge of Plaintiff interest in Smith's claim. *Id.* at ¶¶ 12–14 & 17.

On October 15, 2024, Smith terminated Plaintiff's representation related to his personal injury claim. *Id.* at ¶ 15. On October 16, 2024, Plaintiff notified WMATA of the terminated representation and Plaintiff's attorney's lien being asserted against any settlement or other recovery for the work Plaintiff had performed and expenses it had incurred, pursuant to MD. CODE ANN., BUS. OCC. & PROF., § 10-501. Compl., ECF No. 4, ¶¶ 16 & 18. Plaintiff specifically

advised WMATA that the asserted lien consisted of $10,000.00 in attorney's fees and $469.07 in expenses. *Id.* at ¶ 18. Plaintiff alleges that WMATA remained aware that the settlement funds were subject to Plaintiff's asserted interest. *Id.* at ¶ 19.

On November 6, 2024, WMATA and Smith entered into a settlement agreement for $13,000.00. *Id.* at ¶ 20. On November 11, 2024, Smith requested that Plaintiff reduce its lien to $5,000.00, and Plaintiff agreed. *Id.* at ¶ 21. On November 14, 2024, Plaintiff notified WMATA of the reduced lien amount and instructed WMATA to forward payment to Plaintiff's Washington, D.C. office. *Id.* at ¶ 22. Nevertheless, Plaintiff received no payment. *Id.* at ¶ 23.

Plaintiff alleges that WMATA had no legitimate basis for disregarding Plaintiff's asserted lien interest and disbursing the settlement funds directly to Smith. *Id.* at ¶ 24. Plaintiff further alleges that WMATA's conduct caused Smith to breach the legal-services agreement by failing to remit Plaintiff's fees and costs from the settlement proceeds. *Id.* at ¶ 28. Plaintiff seeks $5,000.00 in compensatory tort damages resulting from this alleged interference with Plaintiff's contract. *Id.* at ¶ 29. After Plaintiff filed its suit, WMATA removed Plaintiff's case to federal court and filed its motion to dismiss. Defendant WMATA's Motion to Dismiss, ECF. No. 11.

## III. <u>LEGAL STANDARD</u>

### A. Rule 12(b)(1)

A motion invoking sovereign immunity presents a question of subject-matter jurisdiction. *Smith v. Washington Metro. Area Transit Auth.*, 290 F. 3d 201, 205 (4th Cir. 2002). When, as here, the defendant contends that the allegations themselves are insufficient to establish jurisdiction, the plaintiff receives the same procedural protections applicable to Rule 12(b)(2) motions. *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). The question is whether those allegations establish a claim that falls within Section 80's waiver of WMATA's immunity.

**B. Rule 12(b)(6)**

A complaint survives a motion to dismiss under Rule 12(b)(6) when it contains sufficient factual material, accepted as true, to state a plausible claim. *Ashcroft v.* Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). This Court must accept well-pled factual allegations as true and draw all reasonable inferences in the Plaintiff's favor. *Id.* At this stage, the Court does not resolve disputed factual questions or determine whether Plaintiff will ultimately prevail on the merits. *Republican Party N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## IV. ARGUMENT

WMATA's Motion to Dismiss should be denied because Section 80 of the WMATA Compact waives sovereign immunity for torts committed during the course of proprietary functions. MD. CODE ANN., TRANSP. § 10-204(80)(a). The conduct alleged here concerns WMATA's post-settlement handling of settlement proceeds rather than the exercise of governmental policy discretion. The Complaint further states a claim under Maryland law for tortious interference with contract: it alleges a valid contract, WMATA's actual knowledge of that contract and Plaintiff's interest in the proceeds, intentional interference, breach caused by that interference, and resulting damages. Compl., ECF No. 4, ¶¶ 7–9, 12–13, 16–18, & 20–23. *See Fraidin v. Weitzman*, 611 A.2d 1046, 1057 (Md. Ct. Spec. App. 2003) (stating the elements of tortious interference with contract). At minimum, if the Court concludes that the Complaint does not sufficiently plead factual detail to establish a plausible claim for relief, Plaintiff should be granted leave to amend rather than suffer dismissal with prejudice.

**A. The WMATA Compact waives sovereign immunity for torts arising from its proprietary functions, and the conduct alleged here falls outside WMATA's immunity.**

WMATA is an interstate compact agency upon which Maryland, Virginia, and the District of Columbia conferred their respective sovereign immunities. *Smith*, 290 F.3d at 206. However,

WMATA's immunity is not absolute. Second 80 of the WMATA Compact expressly waives immunity for certain torts:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents *committed in the conduct of any proprietary function*, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

MD. CODE ANN., TRANSP. § 10-204(80)(a) (emphasis added). Thus, Section 80 establishes a dichotomy: WMATA is immune from torts occurring in the performance of governmental functions but is liable for torts committed in the conduct of proprietary functions. *Id.*; *Doe v. Washington Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 362 (D.D.C. 2020). The Court must determine whether the alleged conduct constitutes a governmental or proprietary function under Section 80. *Doe*, 453 F. Supp. at 363. If the conduct is proprietary, the Court proceeds to apply the relevant signatory's substantive law. MD. CODE ANN., TRANSP. § 10-204(80)(a).

In determining whether the relevant conduct is proprietary or governmental, courts apply a two-step framework. *Smith*, 290 F.3d at 207; *Doe*, 453 F. Supp. 3d at 363 (citing *KiSA Constr.Corp. v. Washington Metro. Area Transit Auth.*, 321 F.3d 1151, 1158 (D.C. Cir. 2003)). First, the Court must consider whether WMATA was engaged in a quintessential governmental function. *Doe*, 453 F. Supp. 3d at 363. Activities that are inherently governmental in character, such as law enforcement or the creation of a public transportation system, are of this type. *Id.* at 365–66.

If the challenged activity is not quintessentially governmental, the Court must then consider whether the activity was discretionary or ministerial. *Smith*, 290 F.3d at 207–08; *Doe*, 453 F. Supp. 3d at 363; *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015).. An activity is discretionary when it involves an element of judgment or choice grounded in social, economic, or political policy. *Smith*, 290 F.3d at 208; *Banneker*, 798 F.3d at 1138.

Inversely, conduct is ministerial where a statute, regulation, or policy specifically prescribes a course of action and leaves the actor without meaningful discretion. *Smith*, 290 F.3d at 208; *Banneker*, 798 F.3d at 1138 (stating that if a statute prescribes specific conduct, then "the conduct is not shielded by immunity"). The fact that WMATA exercised discretion somewhere within a broader transaction does not immunize every subsequent act associated with that transaction. The relevant inquiry is whether the particular conduct alleged to constitute the tort involved the type of governmental policy judgment protected by Section 80. *Smith*, 290 F.3d at 208.

The conduct alleged here was WMATA's post-settlement disposition of settlement proceeds, not a quintessential governmental function. Plaintiff's Complaint does not challenge WMATA's operation of public transportation or the governmental decisions that led to the underlying personal-injury claim. Nor does Plaintiff challenge WMATA's discretionary decision to negotiate or settle that claim. The conduct challenged in this case occurred after the settlement.

Plaintiff alleges that WMATA received notice of Plaintiff's representation of Smith and of Plaintiff's contractual interest in any recovery. Compl., ECF No. 4, ¶¶ 12–14. After the termination of representation, Plaintiff expressly notified WMATA of its attorney's lien against any recovery. Compl., ECF No. 4, ¶ 15–19. Then, WMATA settled Smith's claim for $13,000.00. *Id.* at ¶ 20. Subsequently, Plaintiff agreed to accept $5,000.00 for satisfaction of its lien interest, and Plaintiff specifically notified WMATA of that agreement. *Id.* at ¶¶ 21–22. Plaintiff's notice of reduced lien amount instructed WMATA to forward the payment to Plaintiff. Compl., ECF No. 4, ¶ 22. Plaintiff alleges that WMATA disbursed the settlement proceeds directly to Smith despite these notifications. *Id.* at ¶¶ 23–25 & 27–28.

Plaintiff's Complaint alleges a discrete activity for purposes of Section 80: the disposition of settlement proceeds after WMATA had notice of Plaintiff's asserted contractual and statutory interest in those proceeds. That conduct is not a quintessential governmental function. Further, WMATA's alleged decision to disregard Plaintiff's interest and distribute the settlement proceeds directly to Smith was not grounded in social, economic, or political policy. It was an operational or ministerial act concerning the administration of this particular settlement after the settlement agreement had been negotiated and agreed upon by WMATA.

The distinction is significant. In *Smith*, the Fourth Circuit recognized that WMATA's broader decisions concerning its operations could involve discretionary policy judgments, while compliance with specifically prescribed safety requirements was ministerial. 290 F.3d at 208–09. The same principle applies to this case. WMATA possessed discretion in evaluating and negotiating a settlement agreement for Smith's underlying personal injury claim. However, Plaintiff's Complaint alleges that WMATA's actions *after the settlement had been reached* and Plaintiff's repeatedly asserted interest in the proceeds, resulting in tortious interference with contract. At minimum, WMATA's post-settlement conduct did not involve the exercise of governmental policy discretion.

The statutory framework governing attorney liens further supports treating the challenged conduct as operational or ministerial rather than governmental. Maryland law provides that an attorney has a lien on a settlement obtained as a result of the attorney's legal services. MD. CODE ANN., BUS. OCC. & PROF. § 10-501. The Maryland Rules further establish a procedure for asserting and adjudicating that lien. Md. Rule 2-652.[1] Maryland law recognizes a legally

[1] The rule provides the following regarding notice of attorney's liens:

> An attorney who has a lien under Code, Business Occupations and Professions Article, § 10-501, may assert the lien by serving a written notice by certified mail or personal delivery upon the client and upon each person against whom the lien is to be enforced. The notice shall claim the lien, state

protected interest in settlement proceeds and provides a specific procedure through which that interest may be asserted against persons holding or receiving those proceeds.

This statutory framework distinguishes the present allegations from an ordinary dispute over whether WMATA should settle a claim or how it should allocate public resources. The Complaint alleges that WMATA had notice of a specific, quantified interest in a specific settlement, that Plaintiff agreed to accept $5,000.00 in satisfaction of that interest, and that WMATA was instructed to remit that amount to Plaintiff. Compl., ECF No. 4, ¶ 18–22. Thus, the alleged conduct concerns the administration of identified settlement proceeds in the face of a known legal claim to those proceeds; it does not involve the formulation of public policy or the exercise of transportation-related governmental discretion. Section 10-501 and Rule 2-652 demonstrate that Plaintiff's asserted interest was not merely an informal demand for payment. Maryland law provides a recognized statutory interest and procedure concerning settlement proceeds.

WMATA's reliance on *Watters v. Washington Metro. Area Transit Auth.* 295 F.3d 26 (D.C. Cir. 2002), does not establish immunity from the distinct tort alleged here. In *Watters,* the D.C. Circuit Court held that sovereign immunity barred an attorney's effort to enforce an attorney's lien against WMATA's settlement proceeds. *Id*. Plaintiff does not ask this Court to disregard the authority of *Watters*. However, that case must be applied to the claim actually pleaded. *Watters* involved an attorney's attempt to enforce an equitable lien against WMATA. *Id.* at 39 ("Watters brought the instant suit against WMATA for . . . 'breach of duty to enforce equitable lien.'"). The D.C. Circuit Court concluded that the lien claim did not fall within Section 80's waiver because

---

> the attorney's interest in the action, proceeding, settlement, judgment, or award, and inform the client or other person to hold any money payable or property passing to the client relating to the action, proceeding, settlement, judgment, or award.

Md. Rule 2-652(a).

an attorney's equitable lien was neither a contract with WMATA nor a tort within the statutory waiver. *Id.* at 40–41.

In contrast, Plaintiff's Complaint pleads a tortious interference claim seeking compensatory damages for WMATA's intentional interference with Plaintiff's contractual relationship with Smith. Compl., ECF No. 4, ¶ 26–29. Maryland's attorney-lien statute provides additional legal recognition of Plaintiff's interest in the settlement proceeds, and it does not transform the pleaded tort into an equitable action to enforce a lien against WMATA.

The distinction between this case and *Watters* is crucial for the Section 80 immunity waiver analysis. *Watters* does not hold that WMATA enjoys absolute immunity from every tort arising from its handling of settlement proceeds. Instead, it established that the particular equitable lien claim fell outside of Section 80's waiver. Plaintiff's claim must be evaluated according to the governmental/proprietary framework applicable to the tort actually alleged. Because the Complaint alleges ministerial conduct that was not quintessentially governmental and did not involve social, economic, or political policy discretion, Section 80 does not bar Plaintiff's claim. Accordingly, this Court should deny Defendant WMATA's motion to dismiss for lack of subject matter jurisdiction.

**B. Plaintiff's Complaint states a claim for tortious interference under Maryland law.**

The WMATA Compact provides that liability for a proprietary-function tort is determined "in accordance with the law of the applicable signatory (including rules on conflict of laws." MD. CODE ANN., TRANSP. § 10-204(80)(a). In Maryland, courts apply the substantive law of the state in which the tort occurred. *Hauch v. Connor*, 453 A.2d 1207, 1209 (Md. 1983) (citing *White v. King*, 223 A.2d 763 (1966). The cause of action arose in Maryland. Compl., ECF No. 4, ¶ 3. Therefore, Maryland law governs the substantive elements of Plaintiff's claim.

In Maryland, tortious interference with contract requires: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of said contract; (3) the defendant's intentional interference with that contract; (4) breach of the contract by the third party; and (5) resulting damages to the plaintiff. *Fraidin*, 611 A.2d at 1057. Plaintiff's Complaint adequately alleges each element.

**1. Plaintiff's Complaint alleges a valid contract between Plaintiff and Smith.**

On October 2, 2023, Plaintiff and Smith entered into a written legal-service agreement. Compl., ECF No. 4, ¶¶ 7–11. The agreement established Plaintiff's entitlement to compensation from any recovery obtained on Smith's claim and provided for settlement proceeds to be paid into Plaintiff's trust account so that Plaintiff's fees and costs could be paid before the remaining proceeds were distributed to Smith. *Id*. Therefore, accepting these facts as true, Plaintiff's Complaint adequately pled the existence of a contractual relationship between Plaintiff and a third party.

**2. Plaintiff's Complaint alleges WMATA's actual knowledge of the contract and Plaintiff's interest.**

On October 2, 2023, Plaintiff notified WMAA of its representation of Smith. *Id.* at ¶ 12. On November 22, 2023, Plaintiff provided further notice of its representation to WMATA. *Id.* at ¶ 13. On October 16, 2024, following termination of the representation, Plaintiff notified WMATA of its attorney's lien. *Id.* at ¶¶ 16–19. Accepting these facts as true, Plaintiff's Complaint adequate pled that WMATA had actual knowledge of Plaintiff's contractual relationship with Smith and Plaintiff's continuing claim to compensation from any recovery.

**3. Plaintiff's Complaint alleges intentional interference.**

Plaintiff Complaint alleges that WMATA intentionally interfered with Plaintiff's contractual rights by releasing the settlement funds directly to Smith despite knowing of

Plaintiff's contractual and statutory interest. *Id.* at ¶ 27. This allegation is supported by a detailed factual chronology rather than standing alone as a conclusory assertion. Plaintiff's Complaint alleges repeated notice, an express assert of the lien, a $13,000.00 settlement, Smith's request that Plaintiff reduce its interest, Plaintiff's agreement to that reduction, and Plaintiff's subsequent instruction to WMATA to remit payment of $5,000.00 for satisfaction of the lien to Plaintiff. *Id.* at ¶¶ 12–24. Taken together, those allegations permit a reasonable inference that WMATA intentionally chose to distribute the settlement proceeds in a manner inconsistent with Plaintiff's known contractual interest.

WMATA relies on *Ronald M. Sharrow, Chartered v. State Farm. Mut. Auto. Ins. Co.*, 511 A.2d 492 (Md. 1986), to argue that knowledge of an attorney's contractual relationship with a client and direct settlement with that client are insufficient to establish intentional interference. Plaintiff does not dispute that proposition. *Sharrow*, however, alo recognized that intentional interference does not require "ill will or spite, and need be only a wrongful or unlawful act done intentionally without cause or excuse." *Sharrow*, 511 A.2d at 498.

Plaintiff's Complaint alleges that WMATA acted without cause, justification, or excuse. The Complaint alleges that WMATA received repeated notice of Plaintiff's specific financial interest, received an express lien claim, knew the amount of the claimed interest, was notified of the parties' agreement reducing that interest to $5,000.00, and was expressly instructed to pay that amount to Plaintiff before allegedly distributing the settlement proceeds to Smith. Compl., ECF No. 4, ¶¶ 16–24. Further, Plaintiff's Complaint alleges that WMATA acted intentionally and without justification and that WMATA had "no legitimate basis" for disregarding Plaintiff's interest that would excuse its conduct. *Id.* at ¶¶ 24 & 27.

Whether those facts ultimately establish wrongful interference is a merits question. At the pleading stage, these allegations sufficiently permit a reasonable inference that WMATA intentionally interfered with the contractual relationship. Therefore, Plaintiff's Complaint plausibly pled this element of tortious interference with contract.

**4. Plaintiff's Complaint alleges that Smith breached the contract as a result of WMATA's interference.**

Plaintiff's Complaint alleges that WMATA's conduct caused Smith to breach the legal-services agreement by failing to remit Plaintiff's fees and costs from the settlement proceeds. *Id.* at ¶ 28. Accepting this fact as true, Plaintiff's Complaint adequately pled Smith's breach of the contract.

**5. Plaintiff's Complaint alleges compensatory damages resulting from the breach of contract.**

Finally, Plaintiff alleged that it suffered $5,000.00 in damages as a direct result of the interference and subsequent breach of contract. *Id.* at ¶ 29. Plaintiff's compensatory damages correspond to the amount Plaintiff and Smith agreed would satisfy Plaintiff's asserted lien interest. *Id.* at ¶ 21. Accordingly, Plaintiff's Complaint plausibly pled the damages element. Because all elements of Plaintiff's claim are plausibly pled, Defendant WMATA's motion to dismiss for failure to state a claim must be denied.

**C. If this Court finds Plaintiff's Complaint insufficient, Plaintiff should be granted leave to amend rather than the claim being dismissed with prejudice.**

Plaintiff plausibly pled the element for a tortious interference with contract claim under the applicable Maryland law. However, if this Court concludes that Plaintiff's Complaint does not plead sufficient facts concerning the precise manner in which WMATA intentionally interfered with Smith's contractual obligations, dismissal with prejudice would nevertheless be inappropriate.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires. Plaintiff's Complaint already establishes the essential factual chronology underlying Plaintiff's claim: the written contract, repeated notice to WMATA, assertion of the attorney's lien, settlement, reduction of the lien amount, specific instructions for payment, and WMATA's alleged failure to remit payment. Compl., ECF No. 4, ¶¶ 7–9, 12–13, 16–18, & 20–23. If this Court determines that additional factual allegations are necessary, Plaintiff should be permitted to amend its Complaint to provide additional factual details concerning WMATA's conduct. The appropriate remedy for a curable pleading deficiency is leave to amend, not dismissal with prejudice. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) ("The federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given *every* opportunity to cure a formal defect in his pleading." (emphasis added; citation omitted)). Accordingly, should this Court find Plaintiff's Complaint insufficient, this Court should deny Defendant WMATA's Motion to Dismiss and grant Plaintiff leave to amend.

## V. <u>CONCLUSION</u>

Plaintiff respectfully requests this Court to **DENY** Defendant WMATA's Motion to Dismiss. Section 80 does not provide WMATA with immunity from every tort arising in connection with its activities; it waives immunity for proprietary-function torts. The specific conduct alleged here concerns WMATA's post-settlement disposition of settlement proceeds after repeated notice of Plaintiff's contractual and statutory interest, and the Complaint plausible alleges that conduct was proprietary rather than governmental.

Further, Plaintiff's Complaint states a claim for tortious interference under Maryland law. If the Court concludes that additional factual allegations are necessary to establish the wrongful

nature of the alleged interference, Plaintiff respectfully requests leave to amend pursuant to Rule 15(a)(2), rather than dismissal with prejudice.

DATE: September 29, 2026

Respectfully Submitted,

**SLOCUMB LAW FIRM, LLC**

By Counsel

*/s/ Kelly R. Arnold*
Kelly R. Arnold, Esquire
Bar #: 32399
SLOCUMB LAW FIRM, LLC
401 E. Pratt Street, Suite 444
Baltimore, Maryland 21202
Tel: (443) 220-0049
Fax: (443) 589-7665
karnold@slocumblaw.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on Tuesday, September 29, 2026, a true and correct copy of the foregoing was served electronically through the Court's Case Management/Electronic Case Filing (CM/ECF) system on:

J. Douglas Cuthbertson
WMATA Legal & Compliance
PO Box 23768
Washington, DC 20026-3768
T: (202) 962-2537
F: (202) 962-2550
E: JDCuthbertson@WMATA.com

*/s/ Kelly R. Arnold*
Kelly R. Arnold, Esquire
Bar #: 32399
SLOCUMB LAW FIRM, LLC
*Attorney for Plaintiff*